# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CIGNA CORPORATION**, <br><br> Plaintiff, <br><br> v. <br><br> **CELGENE CORPORATION, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 21-90-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                                 May 24, 2021

  Plaintiff Cigna Corporation filed this action against Defendants Celgene Corporation and its parent company Bristol-Meyers Squibb Corporation ("BMS") (collectively Defendants) alleging that Defendants violated federal and state antitrust laws by suppressing generic competition against Celgene's Thalomid and Revlimid drugs. (Doc. No. 1.) Presently before the Court is the parties' joint motion to transfer venue to the District of New Jersey pursuant to 28 U.S.C. § 1404(a). (Doc. No. 17.) Following a status conference with the Court, the parties filed a supplemental memorandum in support of their joint motion to transfer providing additional information related to BMS's presence in the Eastern District of Pennsylvania.[1] (Doc. No. 19.) For the reasons that are discussed below, the parties' joint motion will be granted.

### I.

  Cigna's complaint alleges six counts against Defendants: (I) violation of Section 2 of the Sherman Act; (II) a monopolization and monopolistic scheme under various state laws; (III) an

---

[1] The parties also argued that if the Court were to find venue improper, transfer to the District of New Jersey would also be proper pursuant to 28 U.S.C. § 1406(a). (Doc No. 19 at 2–3.)

attempted monopolization under state laws; (IV) unfair and deceptive trade practices under state laws; (V) unjust enrichment under state laws; and (VI) declaratory and injunctive relief under Section 16 of the Clayton Act for Celgene's violations of Section 2 of the Sherman Act. (*Id.* at ¶¶ 448–89.) The facts of this action are complex, as evidenced by Cigna's 131-page complaint. As relevant to this Memorandum, the facts are as follows.[2]

Cigna is a Delaware corporation with a principal place of business in Bloomfield, Connecticut. (Doc. No. 1 at ¶ 14.) Cigna is the parent company of or is otherwise affiliated with businesses that operate specialty pharmacies, health insurance plans, and prescription drug plans. (*Id.* at ¶¶ 15–16.) Celgene is a pharmaceutical company, incorporated in Delaware and with a principal place of business in Summit, New Jersey, that manufactures and markets Thalomid and Revlimid. (*See id.* at ¶ 19.) BMS is Celgene's parent company and is incorporated in Delaware, with a principal place of business in New York City, New York. (*Id.* at ¶ 20.) BMS has owned Celgene since January 2, 2019. (*Id.*) According to the parties' supplemental memorandum in support of their joint transfer motion, BMS also leases a storage facility in Falsington, Pennsylvania, which is located within the Eastern District of Pennsylvania. (Doc. No. 19 at ¶ 4.)

The prescription drug market is subject to a complex regulatory scheme designed to balance the intellectual property rights of pharmaceutical companies, patient health and safety, and the benefits of free-market competition. (*See id.* at ¶¶ 21–67.) Federal law requires companies that invent a new drug to obtain approval from the Food and Drug Administration

---

[2] Unless otherwise noted, these facts are all drawn from Cigna's complaint. At this stage of the litigation, we take the well-pleaded allegations in Cigna's complaint as true. *See Lewis v. Nat'l Bd. of Osteopathic Med. Exam'rs*, Civil Action No. 20-4368, 2020 WL 7260747, at *1 n.1 (E.D. Pa. Dec. 10, 2020).

("FDA") before they may sell the drug.[3] (*Id.* at ¶ 28 (citing 21 U.S.C. § 355(b)).)

At issue in this suit are the allegedly unlawful tactics that Defendants purportedly employed to protect two of Celgene's name-brand drugs, Thalomid and Revlimid, from generic competition. (*Id.* at ¶ 1.) Cigna alleges that Celgene manipulated its Risk Evaluation and Mitigation Strategy ("REMS") programs for these drugs, abused the patent process related to them, and filed baseless citizen petitions, all to prevent generic manufacturers from producing generic versions of the drugs. (*Id.*) Cigna also alleges that when these efforts failed, Celgene paid off generic manufacturers to delay bringing their generic versions of the drugs to market. (*Id.* at ¶ 2. *See generally id.* at ¶¶ 77–417.)

But for this alleged misconduct, Cigna claims that generic Thalomid would have been commercially available in early 2009, and generic Revlimid would have entered the market in or around 2010. (*Id.* at ¶¶ 419–420.) The result of Celgene's conduct, Cigna says, was the illegal maintenance of a monopoly over the sale of Thalomid and Revlimid, allowing Celgene to artificially inflate the prices of these drugs without fear of lost sales. (*Id.* at ¶ 430.) Additionally, Cigna asserts that it was personally injured by Celgene's alleged misconduct in that the misconduct forced Cigna to spend more money on Thalomid and Revlemid than it would have otherwise had to if those drugs were subject to generic competition. (*Id.* at ¶ 425.) Cigna and its subsidiaries have purchased both Thalomid and Revlemid from Celgene in this District. (*Id.* at ¶ 12.)

This is one of several cases that has been filed in federal and state courts across the country by various plaintiffs alleging the same basic violations against Defendants. (*See* Doc.

---

[3] New drugs that are approved by the FDA become known as "brand-name drugs"; when these same drugs are manufactured and sold by other companies, they are known as "generic drugs." *See Generic Drug Facts*, U.S. FOOD & DRUG ADMIN., https://www.fda.gov/drugs/generic-drugs/generic-drug-facts (last accessed May 6, 2021).

No. 17 at ¶¶ 2, 10.) In this case, as well as at least three other cases, Defendants have filed motions to transfer to the District of New Jersey, where similar cases are pending.[4]

II.

Although the parties have stipulated to a transfer of venue to the District of New Jersey, the Court must independently evaluate whether transfer is appropriate. *See White v. ABCO Eng'g Corp.*, 199 F.3d 140, 142 (1999) ("We conclude that § 1404(a) transfers may not be made simply by stipulation."). "In addressing a motion to transfer, 'all well-pleaded allegations in the complaint are generally taken as true unless contradicted by the defendant's affidavits, and the Court may examine facts outside the complaint to determine proper venue.'" *Lewis*, 2020 WL 7260747, at *1 n.1 (quoting *Holiday v. Bally's Park Place, Inc.*, CV No. 06-4588, 2007 WL 2600877, at *1 (E.D. Pa. Sept. 10, 2007)).

In federal court, venue transfers are governed by 28 U.S.C. §§ 1404(a) and 1406(a). *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 878 (3d Cir. 1995). Section 1404(a) governs transfer when "both the original and the requested venue are proper." *Id.* Under § 1404(a), a district court may for the convenience of the parties and witnesses and if it is in the interest of justice "transfer any civil action to any other district or division where it may have been brought or to any district or division to which all parties have consented." *See* 28 U.S.C. § 1404(a). "Section 1406(a), on the other hand, applies where the original venue is improper." *Jumara*, 55 F.3d at 878. Under § 1406(a), the court may either dismiss the action or, "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28

---

[4] *See BCBSM, Inc. v. Celgene Corp.*, Case No. 20-cv-02071 (SRN/ECW), 2021 WL 1087662, at *8 (D. Minn. Mar. 22, 2021) (transferring a related matter to the District of New Jersey); *United Healthcare Servs., Inc. v. Celgene Corp.*, Civil No. 20-686(DSD/ECW), 2020 WL 7074626, at *4 (D. Minn. Dec. 3, 2020) (same); Minute Order, *Blue Cross & Blue Shield Ass'n v. Celgene Corp.*, No. 1:20-cv-01980-TSC (Apr. 16, 2021) (same); *see also* Docket, *Humana Inc. v. Celgene Corp.*, No. 2:19-cv-07532-ES-MAH (D.N.J.) (related case originally filed in the District of New Jersey).

U.S.C. § 1406(a).

Under this framework, we must first decide whether venue is proper in the Eastern District of Pennsylvania. Proper venue for Cigna's federal antitrust claims is determined according to the antitrust venue statute, which provides:

> Any suit, action, or proceeding under the antitrust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found.

15 U.S.C. § 22.

The general venue statue contained in 28 U.S.C. § 1391[5] applies to Cigna's state law claims, or in the alternative a court may exercise "pendent venue" over state law claims arising out of the same operative facts as Cigna's federal antitrust claims. *See, e.g.*, *Dockery v. Heretick*, Civil Action No. 17-4114, 2019 WL 2122988, at *14 (E.D. Pa. May 14, 2019); *McKinney v. Pinter*, Civil Action No. 18-4185, 2019 WL 952247, at *3–4 (E.D. Pa. Feb. 26, 2019).

III.

As for Cigna's federal antitrust claims, contained in Counts I and VI of the complaint, venue is proper under 15 U.S.C. § 22 in any district in which the Defendants reside, may be found, or transact business.

---

[5] Section 1391(b) states:

> A civil action may be brought in (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*Defendant Celgene*

Cigna alleges that it and its subsidiaries have purchased Thalomid and Revlemid from defendant Celgene in the Eastern District of Pennsylvania and that Celgene has its principle place of business in the District of New Jersey. (Doc. No. 1 at ¶¶ 12, 19.) Therefore, because Celgene transacts business in this District and resides in the District of New Jersey, both Districts are proper venues for Cigna's federal antitrust claims against Celgene.

Because both the Eastern District of Pennsylvania and the District of New Jersey are proper venues for Cigna's federal antitrust claims, we must next consider the *Jumara* private and public factors to determine whether transfer to the District of New Jersey is appropriate. *See Jumara*, 55 F.3d at 879 (outlining the public and private interest factors that must be considered before a case is transferred pursuant to § 1404(a)); *Yelverton v. Lab. Corp. of Am. Holdings*, CIVIL ACTION NO. 19-6045-KSM, 2020 WL 2307353, at *3 (E.D. Pa. May 8, 2020) ("[H]aving made the threshold determination under § 1404(a) that venue is proper in both forums, the Court now considers the *Jumara* private and public interest factors to determine whether transfer to the District of Delaware under § 1404(a) is appropriate in this case.").

In *Jumara*, the Third Circuit explained that the private interest factors are: (1) the "plaintiff's forum preference as manifested in the original choice," (2) the defendant's forum preference; (3) "whether the claim arose elsewhere;" (4) "the convenience of the parties as indicated by their relative physical and financial condition;" (5) "the convenience of witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora;" and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum." 55 F.3d at 879. The public interest factors include: (1) "the enforceability of the judgment;" (2) "practical considerations that could make the trial easy,

expeditious, or inexpensive;" (3) "the relative administrative difficulty in the two fora resulting from court congestion;" (4) "the local interest in deciding local controversies at home;" (5) "the public policies of the fora;" and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id.*

For the private interest factors, although Cigna originally filed this case in the Eastern District of Pennsylvania, Cigna has stipulated to the transfer to the District of New Jersey, rendering the first private interest factor essentially neutral. (Doc. No. 17 at ¶ 9). Celgene is headquartered in New Jersey and prefers to litigate this matter in the District of New Jersey. Given the close proximity of the two fora, the other private interest factors—including proximity of witnesses that may be needed for trial and the location of books and records—do not "render one forum significantly more convenient than the other." *Jumara*, 55 F.3d at 882. As for the public interest factors, there is no indication that a judgment against Celgene could be more easily enforced in this District as opposed to the District of New Jersey, so this factor does not weigh for or against transfer. *See Perrigo Co. v. AbbVie, Inc.*, Civil Action No. 20-2132, 2020 WL 6200192, at *3 (E.D. Pa. Oct. 21, 2020). Given the proximity of the District of New Jersey and Eastern District of Pennsylvania, it is unlikely that trial will be substantially easier, more expeditious, or more inexpensive in one jurisdiction over the other.[6] And, given that Celgene is "at home" in the District of New Jersey, this factor weighs slightly in favor of transfer. As the

---

[6] As one judge put it in evaluating a proposed transfer from the District of New Jersey to the Eastern District, "as the James A. Byrne Courthouse in Philadelphia is visible from the upper floors of the Mitchell H. Cohen Courthouse in Camden, the Court cannot conceive of any meaningful inconvenience or difficulty posed by continued litigation in New Jersey as opposed to the Eastern District of Pennsylvania." *United Ass'n of Plumbers & Pipefitters Loc. 322 of S. N.J. v. Mallinckrodt ARD, LLC*, Civil No. 20-188 (RBK/KMW), 2020 WL 5627149, at *8 (D.N.J. Aug. 18, 2020). As the related cases in the District of New Jersey are assigned to the Honorable Esther Salas (*see* Doc. No. 17 at ¶¶ 3–5), who is stationed in Newark, the situation in this case is not quite as dramatic as that in *Mallinckrodt*. Nonetheless, the spirit of the *Mallinckrodt* court's analysis applies equally here.

claims allege nationwide violations of federal law there are no distinct public interests in resolving the claims in Pennsylvania, no clear difference in policy preferences for the two locales, and no disparities in the qualifications of the federal judges sitting in the two districts to pass on federal law. *See Jumara*, 55 F.3d at 882–83. Court congestion does weigh against transfer as the District of New Jersey currently faces a significantly heavier caseload than this Court,[7] however, the other public interest factors, combined with the fact that a number of related actions are pending in New Jersey, weigh heavily in favor of transfer here.

The Court finds that the private and public interest factors weigh in favor of transferring Counts I and VI against Celgene to the District of New Jersey—particularly given the parties' joint preference to litigate this matter there and the fact that there are already related actions pending there. *See Orndorff v. Ford Motor Co.*, Civil Action No. 20-00247-KSM, 2020 WL 1550760, at *1 (E.D. Pa. Mar. 31, 2020) (approving transfer in part because the parties had consented to it); *Dawson v. Gen. Motors LLC*, No. 3:19-cv-08680, 2020 WL 953713, at *2 (D.N.J. Feb. 24, 2020) (same); *Jermano v. Graco Child.'s Prods., Inc.*, Civil Action No. 12-5905, 2013 WL 12156081, at *1 (E.D. Pa. Feb. 12, 2013) (same); *Travelers Indem. Co. v. E.F. Corp.*, Civ. A. No. 95-5660, 1997 WL 135819, at *8 (E.D. Pa. Mar. 17, 1997) ("Because of the related actions pending in New Jersey, the public interests weigh heavily in favor of transfer.") (collecting cases).

---

[7] In the twelve-month period ending on September 30, 2020, there were 440 pending cases and 306 weighted filings per judge in the Eastern District, and 2,742 pending cases and 860 weighted filings per judge in the District of New Jersey. *See United States District Courts — National Judicial Caseload Profile*, U.S. COURTS, https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0930.2020.pdf (last accessed May 6, 2021).

8

*Defendant BMS*

The Court notes that Cigna's complaint and the parties' joint motion to transfer has very little factual information for the Court to determine if venue is proper as to BMS in either the Eastern District of Pennsylvania or the District of New Jersey. Rather, Cigna and the Defendants assert that "[v]enue is proper in the District of New Jersey because Celgene is headquartered there and the Complaint alleges conduct there." (Doc. No. 17 at ¶ 8.)

Cigna's complaint alleges that BMS "wholly owns Defendant Celgene Corporation as its subsidiary," "is a biopharmaceutical drug company incorporated under the laws of Delaware with its principal executive offices located [in New York City]," and "is a publicly-traded corporation registered on the New York Stock Exchange under the symbol 'BMY.'" (Doc. No. 1 at ¶ 20.) Although the complaint's allegations largely refer to the actions of both Defendants Celgene and BMS collectively as "Celgene," the parties agreed during a status conference with the Court that, for the purposes of transfer, the complaint can be read as alleging violations of the laws by both Defendants.

The parties have filed a supplemental memorandum in support of their joint motion to transfer that asserts that "BMS presently leases a storage facility in Falsington, Pennsylvania"—a town located within the Eastern District. (Doc. No. 19 at ¶ 4.) The Court finds that the fact BMS has a storage facility in the Eastern District constitutes a sufficient presence to find venue proper pursuant to § 1404(a) for the federal antitrust claims.[8]

---

[8] The Third Circuit has explained that, for the purposes of 15 U.S.C. § 22, a corporation may be "found" in any judicial district in which it has a "presence" and "continuous local activities." *In re Auto. Refinishing Paint Antitrust Litig.*, 358 F.3d 288, 293 n.6 (3d Cir. 2004) (quoting *Caribe Trailer Sys., Inc. v. P.R. Mar. Shipping Auth.*, 475 F. Supp. 711, 716 (D.D.C. 1979)). Additionally, a corporation "transacts business" within a district for § 22 purposes if, "in the ordinary and usual sense" it engages "in any substantial business operations" there. *United States v. Scophony Corp. of Am.*, 333 U.S. 795, 807 (1948). The Court finds that, for the purposes of 15 U.S.C. § 22, a company that rents a warehouse within a judicial district may be "found" in and "transacts business" in that district. *See R.I. Fittings Co.*

Additionally, the Court finds that venue is proper in the District of New Jersey as the Court takes judicial notice of the fact that BMS maintains at least five facilities in New Jersey, and these facilities house BMS's finance, legal, and accounting departments.[9] These activities are sufficient indicators that BMS may be found in and transacts business in the District of New Jersey.

Because venue is proper both in this District and in the District of New Jersey, 28 U.S.C. § 1404(a) governs transfer, and the Court again considers whether the *Jumara* private and public interest factors militate in favor of transferring this matter to the District of New Jersey. The Court finds that they do. The analysis of these factors is largely identical to the analysis with respect to Cigna's claims against Celgene, with one exception. That exception is that BMS, unlike Celgene, is not "at home" in the District of New Jersey; it is at home in the District of Delaware and the Southern District of New York. However, given BMS's stated preference to litigate this matter in the District of New Jersey and its significant presence there, this is a distinction without a difference. Therefore, the Court finds, as it did with respect to Celgene, that the *Jumara* public and private interest factors weigh in favor of transferring Counts I and VI against BMS to the District of New Jersey.[10]

IV.

Cigna also brings state antitrust, unfair and deceptive trade practices, and unjust

---

*v. Grinnell Corp.*, 215 F. Supp. 198, 200–01 (D.R.I. 1963) (considering the presence or absence of a warehouse in the district as a factor in the venue analysis under § 22); *Wentling v. Popular Sci. Publ'g Co.*, 176 F. Supp. 652, 657 (M.D. Pa. 1959) (same).

[9] *See Worldwide Facilities*, BRISTOL MYERS SQUIBB, https://www.bms.com/about-us/our-company/worldwide-facilities.html (last accessed May 5, 2021).

[10] In the alternative, even if venue were not proper in the Eastern District, the Court finds that it would be in the interest of justice to transfer Counts I and VI to the District of New Jersey, where venue is proper, and thus would approve the transfer pursuant to 28 U.S.C. § 1406(a).

enrichment claims against Celgene and BMS (Counts II, III, IV and V). "Although venue must generally be established for each cause of action, there is an exception known as 'pendent venue,' which applies 'where claims arise out of the same operative facts.'" *See Dockery*, 2019 WL 2122988, at *14 (quoting *Phila. Musical Soc'y, Loc. 77 v. Am. Fed'n of Musicians of the U.S. & Can.*, 812 F. Supp. 509, 517 n.3 (E.D. Pa. 1992)). Because all the federal antitrust law claims against Celgene and BMS are properly venued in both this District and the District of New Jersey under 15 U.S.C. § 22, and the remaining state law claims (state antitrust, unfair and deceptive trade practices, and unjust enrichment) all arise out of the same operative facts, the Court finds venue is proper in both districts as to these claims against both Defendants.[11] The Court finds its analysis of the public and private *Jumara* factors[12] for the federal antitrust claims is also applicable for the state claims and weighs in favor of transfer for these remaining claims against Celgene and BMS to the District of New Jersey.

V.

For these reasons, the Court finds that transfer to the District of New Jersey is appropriate under § 1404(a). Therefore, the Court grants the parties' joint motion to transfer venue (Doc. No. 17.)

An appropriate Order follows.

---

[11] During the status conference Defendants agreed for purposes of venue only that these state law claims arise out of the same operative facts.

[12] The Court notes that Cigna's claim for unjust enrichment alleges that Defendants have been unjustly enriched under the state laws of both Pennsylvania and New Jersey, and as such, this remains a neutral factor in the Court's analysis, as both the transferor and transferee jurisdictions have an interest in resolving local controversies arising under their laws at home. And, although Cigna alleges a violation of Pennsylvania state law, but not New Jersey law, as to its claim for unfair and deceptive trade practices, the Court finds that the familiarity with the law public interest factor is also neutral here as "[f]ederal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit." *Nathan*, 2019 WL 3216613, at *7.